**Gary Gray ROY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–02–00909–CR, 14–02–00910–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 20, 2004.

Emily Munoz–DeToTo, Houston, for appellant.

Amanda Joy Peters, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant Gary Gray Roy was convicted by a jury of unauthorized use of a motor vehicle ("UUMV") and retaliation. *See* TEX. PEN.CODE ANN. § 31.07(a) (Vernon 2003), 36.06 (Vernon Supp.2004). The jury sentenced appellant to one year's confinement for the offense of UUMV and five years' confinement for the retaliation offense. By four points of error, appellant challenges the factual sufficiency of the evidence supporting the UUMV conviction, the legal and factual sufficiency of the evidence supporting the retaliation conviction, and the trial court's admission of hearsay testimony. We affirm.

### FACTUAL BACKGROUND

Appellant was arrested on December 26, 2001, after Thrifty Car Rental learned he was driving a vehicle owned by Thrifty without proper authority. At the time, appellant was dating Elizabeth Norris, a former employee of Thrifty, and the two had purchased a home together. Norris's sister, Gwen Pappillion, called Thrifty, alerting it to the unauthorized use of a silver Ford Expedition and an alleged scheme by appellant, Norris, and two current employees of Thrifty to use Thrifty vehicles without paying for them. Pappillion claims to have called Thrifty two or three times previously to make similar allegations. However, Russell Atkin, Thrifty's director of security and fraud prevention officer, did not become involved until December 26, 2001. That same day, Pappillion called the police because she suspected appellant was physically abusing Norris. Pappillion testified that, when the police arrived, she also informed them about the vehicles she claimed were stolen from Thrifty. The police questioned Nor-

ris and appellant, but no charges were filed.

Atkin conducted a preliminary investigation based on the information provided by Pappillion and determined a silver Ford Expedition was missing from Thrifty's inventory. Atkin prepared a list of possible locations to find the vehicle and then notified the police. Atkin and an associate began surveillance of appellant and Norris's house, while the police watched another location. Shortly after arriving at the house, Atkin saw appellant park the Expedition in front of the house. Atkin verified that it was, in fact, the missing Thrifty vehicle and then relayed that information to the police. A few minutes later, appellant left the residence in the Expedition, and Atkin began following appellant and updating the police as to their location. The officers arrived shortly thereafter, continued pursuit, and apprehended appellant.

After he was arrested, appellant began yelling from the back of the police car to obtain Atkin's attention. With the officer's permission, Atkin approached the police car and appellant handed him a piece of paper containing three individual's names and phone numbers. According to Atkin, appellant stated he was instructed to call "this girl if [he had] any problems." One of the names on the paper was Nina Nguyen, an employee of Thrifty, and beside her name was her home phone number. Pappillion identified Nina Nguyen, along with Charles Stanford, as the two Thrifty employees involved in the scheme.

The following day, Atkin interviewed Stanford regarding his involvement in the scheme. Atkin testified Stanford admitted his involvement and implicated appellant; however, Atkin never relayed the substance of the conversation to the police or

the prosecutor. Stanford, a Thrifty mechanic, and Nguyen were both terminated from Thrifty.

Norris called a contact at Thrifty and learned that her sister, Pappillion, had notified Thrifty about the Expedition. While appellant was in jail, he telephoned Norris, and after learning of Pappillion's involvement, asked Norris to call Pappillion on a three-way call. Norris complied, and after Pappillion and appellant began arguing, Norris put the receiver down and stopped listening to the conversation. Pappillion testified that during the telephone conversation, appellant threatened to kill her and her children. Enraged, Pappillion went to her sister's house, which was located next door, and the two began fighting. As a result of the fighting, Norris called the police to report domestic violence. Norris testified that when Pappillion entered her house she was upset because appellant had just threatened her. Norris, however, did not hear appellant make any threats, and appellant denied making any threats. When the police arrived, Pappillion described the threats made by appellant; consequently, appellant was charged with retaliation and UUMV. Following his conviction, appellant brings this appeal.

## DISCUSSION

### I. Unauthorized Use of a Motor Vehicle

In his first point of error, appellant claims the evidence is factually insufficient to support his conviction for UUMV. Specifically, appellant contends the State failed to produce any evidence negating the defense of mistake of fact and failed to prove beyond a reasonable doubt appellant knew he did not have consent to operate the vehicle.[1]

1. Appellant's first point of error complains

the evidence is factually insufficient to "sus-

### A. Factual Sufficiency of the Evidence to Support the Jury's Finding of Guilt

We begin the factual sufficiency review with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). In conducting a factual sufficiency review, we view all of the evidence in a neutral light, without favoring either party. *Johnson*, 23 S.W.3d 1, 6—7 (Tex.Crim.App.2000). We will set aside the verdict only if (1) the evidence supporting the verdict, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt, or (2) contrary evidence, if present, is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State*, 144 S.W.3d 477, 484, (Tex. Crim.App.2004); *see Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003); *Johnson*, 23 S.W.3d at 11. When reviewing the evidence, we must give appropriate deference to the jury findings in order to prevent intruding on the fact finder's role as the sole judge of the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 7. Therefore, unless the record clearly reveals a different result is appropriate, we "must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor." *Id.* at 8.

■ In order to prevail, the State was required to prove appellant intentionally or knowingly operated another's vehicle without the effective consent of the owner. TEX. PEN.CODE ANN. § 31.07(a) (Vernon 2003). Thus, the State was required to show not only that appellant intentionally or knowingly operated the vehicle, but that appellant knew he did not have the consent of the owner. *McQueen v. State*, 781 S.W.2d 600, 604 (Tex.Crim.App.1989).

■ Atkin testified that during his investigation, he learned appellant was directly involved in the scheme to use Thrifty vehicles without its knowledge, just as Pappillion reported. In his confession to Thrifty representatives, elicited through Atkin at trial, Stanford claimed appellant arranged to personally pick up the vehicles away from Thrifty property and, in exchange, give Stanford money and tickets. Appellant never had any type of rental agreement with Thrifty. Also, when appellant was arrested, he provided a piece of paper containing Nina Nguyen's name and home telephone number. Appellant, however, denied any involvement and claimed he had never met Stanford personally. Appellant also denied handing the piece of paper to Atkin after he was arrested; rather, he claimed Atkin found the paper in the vehicle and then brought it to appellant to question him about it.

The jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence; thus, the jury is entitled to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 944 S.W.2d 642, 647–48 (Tex.Crim.App.1996). Viewing the evidence in a neutral light, we cannot say the evidence of guilt, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt or the contrary evidence is strong enough that the beyond-a-reasonable-doubt stan-

tain the conviction of unauthorized use of a motor vehicle because the state failed to prove the appellant did not make a mistake of fact." Appellant also argues the State failed to present "any witnesses with personal knowledge of any facts" bearing on appel-

lant's intent. We interpret appellant's complaint as a challenge to the factual sufficiency of the evidence to support the *mens rea* element of both the crime and the defensive issue of mistake of fact. *See* TEX.R.APP. P. 38.1(e).

dard could not have been met. Therefore, we hold the evidence is factually sufficient to support the jury's finding of guilt.

### B. Factual Sufficiency of the Evidence to Support Jury's Implicit Rejection of Appellant's Mistake of Fact Defense

Appellant also challenges the factual sufficiency of the evidence to support the jury's implicit rejection of his mistake of fact defense. In *Zuliani*, the court held that when a defendant challenges the factual sufficiency of the rejection of a defense, we must review all of the evidence in a neutral light and ask whether the State's evidence taken alone is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. 97 S.W.3d at 595.

The Texas Court of Criminal Appeals, however, has recently modified the standard of review for factual sufficiency challenges. *Zuniga*, at 484. In so doing, the court did not specifically address whether the modified standard applies when a defendant challenges the rejection of a defense. However, the court expressed its desire to resolve any conflicts in the standard of review for factual sufficiency by (1) linking the burden of proof at trial to the standard of review on appeal and (2) avoiding language that suggested a lower burden of proof was required. *Id.* Thus, the court concluded that because the State is required to prove the defendant's guilt beyond a reasonable doubt, any standard of review which suggested the lower burden of proof, preponderance of the evidence— whether or not it was actually employed— was inappropriate. *Id.* at 483–84. Accordingly, the court set out the following standards when conducting a factual sufficiency review:

> There is only one question to be answered in a factual-sufficiency review:

Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. This standard acknowledges that evidence of guilt can "preponderate" in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.

*Id.* at 484.

▮▮▮ Following *Zuniga*, we first look at the burden of proof of the parties at trial when, as in this case, the defendant raises the defense of mistake of fact. *See id.* The defendant bears the initial burden to present evidence raising the defense; however, once the defense is raised, the State bears the burden of persuasion to disprove the defense. *Bruno v. State*, 812 S.W.2d 56, 59–60 (Tex.App.-Houston [14th Dist.] 1991), *aff'd*, 845 S.W.2d 910, 912 (Tex.Crim.App.1993); *Anderson v. State*, 11 S.W.3d 369, 372 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). The State meets its burden by proving its case beyond a reasonable doubt. *Bruno*, 812 S.W.2d at 59–60. Thus, the State's burden does not decrease once the mistake of fact defense is raised; rather, the State must disprove the defense by proving its case beyond a reasonable doubt. *Id.*

▮▮▮ Because *Zuliani's* standard for reviewing the factual sufficiency of the rejec-

tion of a defense utilizes "great weight and preponderance" language, and the *Zuniga* court resolved some of the confusion that developed post-*Clewis* by avoiding language suggestive of a preponderance of the evidence burden of proof, we interpret *Zuniga* to modify the standard of review for rejection of a defense. Accordingly, we adopt the *Zuniga* modification for the standard of review when the defendant challenges the rejection of a defense. Thus, when the defendant challenges the rejection of a defense on factual insufficiency grounds, we view all the evidence in a neutral light and determine whether (1) the evidence supporting the rejection of the defense, when considered by itself, is too weak to support the rejection beyond a reasonable doubt or (2) contrary evidence, if present, is strong enough that the beyond-a-reasonable-doubt standard could not be met. *See Zuniga,* at 484. This revised standard encompasses both objectives stated in *Zuniga;* first, it directly links the burden of proof to the standard of review on appeal, and second, it removes the great weight and preponderance language from the standard of review. *See id.*

After reviewing all of the evidence in a neutral light, including the evidence previously detailed, we conclude there was direct evidence from appellant and Norris that Norris gave appellant consent to drive the Expedition. However, the State also presented evidence controverting appellant's assertion that consent to use the vehicles had been given. Atkin testified Norris was not an employee at the time Pappillion called Thrifty about the unauthorized use of one of its vehicles, eliminating Norris as a source of consent. Atkin further testified appellant did not have consent of any kind from Thrifty to use its vehicles.

By its verdict, the jury believed appellant knew he did not have consent to drive the Expedition; thus, implicitly finding against the defensive theory. *Zuliani,* 97 S.W.3d at 594; *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). We hold the State's evidence, when considered by itself, is not too weak to support the implicit finding, and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met. Thus, we conclude the evidence is factually sufficient to support the jury's implied finding against appellant's defensive issue.

Appellant's first point of error is overruled.

## II. RETALIATION

In his second and third points of error, appellant alleges the evidence is legally and factually insufficient to support the jury's verdict as to the retaliation offense. When reviewing a legal sufficiency claim, we review the evidence in a light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson,* 23 S.W.3d at 7. Whether the evidence is legally sufficient is determined as a matter of law; thus, if the evidence is legally insufficient, the case should never have been submitted to the jury. *Oldham v. State,* 5 S.W.3d 840, 844 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The same standard applies regardless of whether the state presents direct or circumstantial evidence. *Huntley v. State,* 4 S.W.3d 813, 814 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd) (en banc). We review the factual insufficiency claim by the standards previously articulated.

Retaliation is defined as intentionally or knowingly harming or threatening to harm another by an unlawful act in

retaliation for, or on account of, the service or status of another as an informant. TEX. PEN.CODE ANN. § 36.06 (Vernon Supp 2004). An "informant" is defined as "a person who communicated information to the government in connection with any governmental function." *Id.* In his legal sufficiency claim, appellant only challenges Pappillion's status as an informant. Appellant claims the State failed to prove beyond a reasonable doubt that Pappillion notified the police; rather, appellant claims Pappillion only notified a third-party, Thrifty, ultimately leading to appellant's arrest. Appellant, however, overlooks Pappillion's testimony that she notified the police about appellant's involvement in the unauthorized use of Thrifty automobiles. Appellant's reliance comes from Pappillion's testimony on cross-examination, in which Pappillion admits she never reported appellant's activity to the police. Pappillion attempted to explain the contrary answer given during cross-examination; however, her answers were abbreviated due to the nature of cross-examination.

The jury was free to believe all or part of Pappillion's testimony and to assess Pappillion's credibility. *Jones,* 944 S.W.2d at 647. When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Manning v. State,* 112 S.W.3d 740, 746 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). If evidence exists establishing beyond a reasonable doubt the elements of the offense, this court is not at liberty to disregard the jury's findings. *McGee v. State,* 923 S.W.2d 605, 608 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (citing *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988)). Here, there was evidence establishing beyond a reasonable doubt Pappillion directly communicated the information about the theft of Thrifty vehicles to the police. Thus, the evidence is legally sufficient to support Pappillion's status as an informant.

In his factual sufficiency challenge, appellant claims the evidence is insufficient to support Pappillion's status as an informant and to show appellant threatened Pappillion. As previously stated, there was evidence both supporting and discrediting Pappillion's status as an informant. Additionally, Pappillion testified that after Norris and appellant initiated a three-way telephone conversation, appellant threatened to kill her and her children. Norris admitted she did not listen to the entire conversation between appellant and Pappillion, and after the two started fighting on the phone, she put her end of the receiver down. Norris testified that moments later, Pappillion entered her house angry and upset because appellant had just threatened her and her family. Appellant testified at trial that he did not threaten Pappillion.

The jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence; thus, the jury is entitled to believe or disbelieve all or part of a witness's testimony. *Jones,* 944 S.W.2d at 647–48. By its verdict, the jury believed the State's version of the facts. Indeed, the jury was entitled to believe Norris's testimony regarding the excited utterance by Pappillion. Viewing the evidence in a neutral light, we cannot say the evidence of guilt, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt or that the contrary evidence is strong enough that the beyond-a-reasonable-doubt standard could not have been met.

Accordingly, we overrule appellant's second and third points of error.

### III. HEARSAY

In his final point of error, appellant alleges the trial court erroneously admit-

ted hearsay testimony concerning Atkin's interview with Charles Stanford, and that such admission violated his Sixth Amendment right to confrontation. At trial, however, appellant objected only to hearsay; therefore, appellant has waived any alleged error under the Confrontation Clause. *Wright v. State*, 28 S.W.3d 526, 536 (Tex.Crim.App.2000). Additionally, appellant did not properly object to every alleged hearsay statement; thus, we will limit our review to those alleged hearsay statements which were properly preserved for review. Tex.R.App. P. 33.1. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Bingham v. State*, 987 S.W.2d 54, 57 (Tex.Crim.App.1999). The trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

■ The specific statements made by Atkin during re-direct examination, which were properly objected to and have been raised as error before this court, include the following three statements: (1) Stanford admitted what he did was wrong; (2) Stanford had a close relationship with Norris; and (3) Norris was not involved. Appellant properly objected to the latter two statements the first time they were admitted; however, the same evidence was admitted later in the trial without objection. Thus, appellant has waived any error with regard to the admission of the second and third statements. *Kirvin v. State*, 575 S.W.2d 301, 302 (Tex.Crim.App.1978) (holding that, when testimony is erroneously admitted over objection but the same testimony is thereafter admitted without objection, the objection in the first instance is waived); *Alexander v. State*, 630

S.W.2d 355, 359 (Tex.App.-Houston [1st Dist.] 1982, no pet.).

Accordingly, we consider only whether the trial court abused its discretion in admitting Atkin's testimony that Stanford admitted what he did was wrong. Appellant objected twice on hearsay grounds to Atkin's testimony regarding Stanford's admission of his own wrongdoing. After the first objection, the State argued the statement was admissible as either a statement against interest[2] or a statement of a co-conspirator.[3] The trial court overruled both objections.

■ A statement is excepted from the hearsay rule when it falls under Texas Rule of Evidence 803(24), the statement against interest exception. This exception allows admission of a statement which tends to subject the declarant to civil or criminal liability, so that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. Tex.R. Evid. 803(24). Rule 803(24) further provides, "In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* In this case, Stanford's admission that what he did was wrong could have subjected him to criminal liability for unauthorized use of a motor vehicle, as well as civil liability to Thrifty. Thus, because the statement would tend to subject Stanford to criminal or civil liability, we must now decide whether corroborating circumstances exist.

■ A trial court should consider the following factors in determining whether corroborating circumstances exist: (1) whether guilt of the declarant is inconsistent with guilt of the defendant; (2) wheth-

---

**2.** Tex.R. Evid. 803(24).

**3.** Tex.R. Evid. 801(e)(2)(E).

er the declarant was situated in such a manner that he might have committed the crime; (3) timing of the declaration; (4) spontaneity of the declaration; (5) the relationship of the parties, and (6) independent corroborative facts. *Dewberry v. State,* 4 S.W.3d 735, 751 (Tex.Crim.App. 1999). The focus of the inquiry is to verify to the greatest extent possible the trustworthiness of the statement, so as to avoid the admissibility of a fabrication. *Bingham,* 987 S.W.2d at 58. All evidence should be considered in determining whether circumstances clearly indicate the trustworthiness of a statement against interest. *Id.*

In this case, Atkin testified Gwen Pappillion implicated Stanford initially, before appellant was ever arrested. When appellant was arrested, Atkin notified police that he believed Stanford was involved, but was unsure of the relationship between the parties. Atkin testified Thrifty's computer system indicated the Expedition should have been in the maintenance division, where Stanford worked. Stanford and Norris maintained a close relationship, even after Thrifty terminated Norris, and Stanford admitted he knew appellant and made arrangements with him to exchange the vehicles. Stanford made the statement the morning after appellant was arrested, and immediately after Atkin asked what his involvement entailed. Additionally, Stanford's position as an employee of Thrifty put him in a position to commit the crime and conceal it. We find this evidence presents sufficient corroborating circumstances to clearly indicate the trustworthiness of the statement. Thus, we hold the trial court did not abuse its discretion in finding the statement met the requirements of Rule 803(24).

Appellant also argues the trial court erred in admitting hearsay testimony by Atkin that Stanford was crying during his confession. Texas Rule of Evidence 801(d) defines hearsay as "a *statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d) (emphasis added). Texas Rule of Evidence 801(a)(2) defines a "statement" to include nonverbal conduct of a person if the nonverbal conduct is intended by the person as a substitute for verbal expression. TEX.R. EVID. 801(a)(2). Here, there is no evidence to suggest Stanford's lachrymose state was intended as a substitute for verbal expression; thus, it not does fall within the definition of a statement under Rule 801(a)(2). Because Atkin's testimony about Stanford's condition was not a *statement* offered in evidence to prove the truth of the matter asserted, Atkin's testimony was not hearsay. Appellant's fourth point of error is overruled.

### CONCLUSION

Having overruled appellant's four points of error, we affirm the judgment of the trial court.