Affirmed and Memorandum Opinion filed August 17, 2004









Affirmed and Memorandum Opinion
filed August 17, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-00452-CR

_______________

 

AHMAD PEYRAVI, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

_________________________________________________

 

On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 919,251

_________________________________________________

 

M E M O R A N D
U M   O P I N I O N

Appellant, Ahmad Peyravi, appeals his conviction for
murder.  In three issues, he contends (1)
the evidence is factually insufficient to support the jury=s verdict, (2) the trial court erred
in denying appellant=s motion for mistrial after a juror had unauthorized contact
with a witness, and (3) the trial court erred in admitting hearsay testimony
under the excited utterance exception. 
Because all dispositive issues are clearly settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.








Background

On July 26, 2002, appellant and Teresa Gensemer were involved
in a romantic relationship and lived together in an apartment in Houston.  Throughout the day, they argued because
Gensemer had taken $3,000 belonging to appellant and deposited it in her bank
account.  Appellant was demanding some of
the money back.  That evening, appellant
called 911 several times as the argument persisted.  Officer Ruben Pena responded to the
calls.  According to Officer Pena,
appellant became agitated and argumentative after he explained that the dispute
was a civil matter and suggested appellant consult an attorney.  Officer Pena threatened to arrest appellant
to encourage him to quit arguing. 
Officer Pena then left the apartment.

Approximately five minutes later, Officer Pena was informed
that appellant had again called 911 and stated that he had stabbed
Gensemer.  Officer Pena hurried back to
the apartment where he met appellant coming out the front door.  Appellant told Officer Pena that he was
defending himself and stabbed Gensemer in the stomach.  After Officer Pena placed appellant in his
patrol car, appellant said Gensemer had tried to Azip@ him[1]
and stab him with a knife.  Paramedics
and a crime scene unit arrived and found Gensemer in the apartment=s kitchen/dining area dead from
multiple stab wounds.  A jury found
appellant guilty of murder and assessed punishment at confinement for life in
the Texas Department of Criminal Justice, Institutional Division, and a $2,000
fine.

Factual Sufficiency








In his first issue, appellant contends the evidence is
factually insufficient to support the jury=s verdict.  Specifically, he challenges the jury=s implicit rejection of his
self-defense claim.  When the defendant
challenges the rejection of a defense on factual insufficiency grounds, we view
all the evidence in a neutral light and determine whether (1) the evidence
supporting the rejection of the defense, when considered by itself, is too weak
to support the rejection beyond a reasonable doubt, or (2) contrary evidence,
if present, is strong enough that the beyond‑a‑reasonable‑doubt
standard could not be met.  Zuniga v.
State, No. 539‑02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21,
2004); Roy v. State, Nos. 14-02-00909-CR, 14-02-00910-CR, 2004 WL
1607489, at *4 (Tex. App.CHouston [14th Dist.] July 20, 2004, no pet. h.); see
Zuliani v. State, 97 S.W.3d 589, 593B95 (Tex. Crim. App. 2003).  Although we review the fact finder=s weighing of the evidence, and we
are authorized to disagree with the fact finder=s determination, our evaluation
should not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).

Appellant relied on his own testimony to support his
self-defense claim.  He initially
testified he was not angry that evening. 
Instead, he claimed Gensemer was angry and violent because her
ex-husband refused to allow her children to visit her.  However, appellant ultimately admitted that
he was angry over the $3,000 prompting his initial 911 calls.  Nevertheless, he still characterized Gensemer
as the aggressor.  According to
appellant, after Officer Pena left, appellant tried to calm Gensemer, but she
cursed him and prepared to leave the apartment. 
Appellant followed Gensemer into the kitchen where she grabbed a
brown-handled knife.  When appellant attempted
to take the knife away from her, she tried to stab him cutting his hand and
arm.  Appellant managed to take the knife
away and place it on the counter.  During
this struggle, Gensemer kneed him in the groin. 
She then tried to grab the brown-handled knife again, so appellant
grabbed a white-handled knife and stabbed her. 
Gensemer kept trying to grab the brown-handled knife, as well as a stun
gun, so appellant continued stabbing her because he thought she would kill him.








Conversely, the jury heard ample evidence supporting the
State=s contention that appellant was not
acting in self-defense when he stabbed Gensemer.  Officer Pena=s testimony rebutted appellant=s claim that Gensemer was the
aggressor.  Officer Pena testified that
appellant was still agitated when he left the apartment just minutes before the
stabbing.  In fact, appellant was more
agitated when Officer Pena left than when he had arrived.  In contrast, Gensemer was not agitated or
angry while Officer Pena was at the apartment. 
Instead, she merely sat in a chair and rolled her eyes to indicate
Peyravi=s complaints were nonsense.  Officer Pena also testified that appellant
appeared to be under the influence of alcohol.

In addition, Steven Garcia, Gensemer=s son who lived in the apartment at
the time, confirmed that Peyravi initiated the argument over the $3,000.  Garcia also testified that appellant had
assaulted Gensemer on previous occasions, and the police had been called to the
apartment to break up their arguments. 
Although Garcia admitted that he once saw Gensemer push appellant, he
stated that Gensemer was never the aggressor. 
Instead, appellant became violent when he drank alcohol.

Paul Shrode, the medical examiner who performed Gensemer=s autopsy, also contradicted
appellant=s self-defense claim.  Dr. Shrode testified that Gensemer sustained
twelve stab wounds including six in her lower chest and abdomen, two in her
head and neck area, and four in her legs. 
One of the stab wounds penetrated her heart and likely caused her
death.  She also had defensive wounds on
her hands, arms, and legs.  Dr. Shrode
stated that it was impossible to determine the order in which Gensemer sustained
her wounds; however, her defensive wounds indicated she fought off her
assailant with her arms and legs to the point that she was finally overpowered
and received the wounds to the chest and abdomen.

Moreover, Mike Walker, a homicide detective with expertise in
blood stain analysis, opined that Gensemer=s wounds were not caused by any
defensive actions on appellant=s part for two reasons. 
First, the blood stains in the kitchen were at fairly low angles
indicating that at some point, fairly quickly, the majority of action took
place while Gensemer was on the ground. 
Second, Detective Walker characterized Gensemer=s death as Aoverkill@ 
meaning she received far more wounds than necessary to cause death.








Detective Walker further explained that when he investigates
whether a homicide involved self-defense, the first thing he looks for is
injuries on the suspect.  Although
appellant claimed that Gensemer first cut him with the brown-handled knife,
Detective Walker and the other investigating officers saw no injuries on
appellant, and appellant did not complain of any injuries.  Likewise, the nurse who screened appellant
when he was booked into jail saw no injuries, and appellant did not complain of
any injuries.  The detectives did find a
brown-handled knife on the counter; however, Detective Andrew Taravella
explained that blood on the knife was consistent with blood spatter on the rest
of the counter from Gensemer=s arterial spurting. 
Further, although appellant claimed Gensemer had tried to grab a stun
gun, Detective Taravella did not find a taser or stun gun anywhere in the
apartment. 

Appellant introduced photographs purportedly showing injuries
Gensemer inflicted on him.  However, the
photographs were taken five days after the stabbing.  The jury was free to believe the witnesses
who examined appellant shortly after the stabbing and conclude that he was not
injured during the struggle.  See
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

Finally, appellant=s 911 call after the stabbing refuted
his self-defense claim.  When the 911
operator asked who stabbed Gensemer, appellant responded, AI did that because she don=t want to give my $2,000.@ 
He did not mention self-defense as the reason he stabbed Gensemer until
Officer Pena returned to the scene.

After reviewing all the evidence, we conclude the State=s evidence, when considered by
itself, is not too weak to support the implicit rejection of appellant=s self-defense claim beyond a
reasonable doubt, and the contrary evidence is not so strong that the beyond‑a‑reasonable‑doubt
standard could not have been met. 
Accordingly, the evidence is factually sufficient to support the jury=s verdict.  Appellant=s first issue is overruled.








Juror Contact 

In his second issue, appellant contends the trial court erred
in denying appellant=s motion for mistrial after a juror had unauthorized contact
with witness Steven Garcia.  After Garcia
testified, a juror approached him in the courthouse bathroom and said, AYou did good on the stand.@ 
Garcia responded, Athank you@ and left.  On appeal,
appellant complains that this exchange amounted to unauthorized juror contact
under article 36.22 of the Texas Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 36.22 (Vernon 1981) (stating that no person
shall be permitted to converse with a juror about the case on trial except in
the presence and by the permission of the court).  However, at trial, appellant moved for mistrial solely on the
basis that the juror=s comment to Garcia established the juror had already made up
his mind concerning the case.  Because
appellant=s objection in the trial court does
not comport with his complaint on appeal, appellant has waived error on this
complaint.  See Guevara v.
State, 97 S.W.3d 579, 583 (Tex. Crim. App. 2003); Jasso v. State,
112 S.W.3d 805, 812 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d). 
Appellant=s second issue is overruled.

Excited Utterance








In his third issue, appellant contends the trial court erred
in admitting hearsay testimony from Houston Police Officer Reynaldo Canales under
the excited utterance exception.  The
trial court conducted a hearing outside the presence of the jury to determine
the admissibility of Officer Canales=s proffered testimony.  At the hearing, Officer Canales testified
that about a year before Gensemer=s death, he responded to a domestic
disturbance call at the couple=s apartment at 4:43 a.m. 
When he arrived, Gensemer was in her sleepwear, and appellant was
talking loudly and digging for his car keys in the laundry.  Gensemer seemed upset, nervous, and a Alittle scared.@ 
She spoke in a soft voice so appellant would not hear her, and she hid
behind Officer Canales to shield her from appellant.  Gensemer told Officer Canales that appellant
had awakened her.  He was frustrated that
he could not find his car keys.  Although
Gensemer did not have his keys, appellant kept insisting that she had
them.  Then, appellant whispered to
Gensemer, AI feel like killing someone.@ 
Gensemer told Officer Canales that she felt scared for her life.  Officer Canales attempted to speak with
appellant, but appellant wanted only to look for his keys.  Officer Canales arrested appellant for
assault by threat.

The trial court determined that Gensemer=s statement relaying appellant=s threat, AI feel like killing someone@ qualified as an excited utterance
and admitted Officer Canales=s testimony during the punishment phase of the trial.  The excited utterance exception to the
hearsay rule provides that Aa statement relating to a startling event or condition made
while the declarant was under the stress of excitement caused by the event or
condition@ is not excluded by the hearsay
rule.  Tex.
R. Evid. 803(2).  The
critical factor to consider when determining if a statement is an excited
utterance is Awhether the declarant was still
dominated by the emotions, excitement, fear, or pain of the event.@  Zuliani, 97 S.W.3d at 596 (Tex. Crim.
App. 2003) (quoting McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim.
App. 1992)).  A court may also consider how much time
elapsed between the startling event and the statement.  See id. at 595.  Whether an out-of-court statement is
admissible under an exception to the hearsay rule is a matter within the trial
court=s
discretion.  Id.  We should not reverse unless a clear abuse of
discretion is shown.  Id.  Our role is limited to determining whether
the record supports the trial court=s
ruling.  Coffin v. State, 885
S.W.2d 140, 149 (Tex. Crim. App. 1994); see Zuliani, 97 S.W.3d at
596.








Officer Canales=s testimony supported the trial court=s determination that Gensemer was Astill
dominated by the emotions, excitement, fear, or pain of the event@ when she
relayed appellant=s threat to Officer Canales.  The event triggering Gensemer=s statement was appellant=s frustration at being unable to find
his keys and the associated verbal threat. 
Gensemer repeated the threat to Officer Canales shortly after it was
made; Officer Canales arrived at the apartment only five minutes after being
dispatched, and Gensemer was still in her sleepwear indicating appellant had
recently awakened her.  Further, when
Gensemer repeated the threat to Officer Canales, appellant was still obsessed
with finding his keys, and Gensemer was scared and used Officer Canales as a
shield.  Therefore, the trial court did not abuse its
discretion in finding Gensemer=s statement was an excited utterance and admitting Officer
Canales=s testimony.  See Salley v. State, 25 S.W.3d 878,
881 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(finding complainant=s statement to police officer that her husband had hit her
qualified as excited utterance because officer arrived at the scene less than
ten minutes after complainant reported the assault, complainant was very upset,
crying, and still in pain from the assault, and she volunteered that her
husband hit her).  Appellant=s third issue is overruled.

The judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed August 17, 2004.

Panel consists of
Justices Fowler, Edelman, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  Officer Pena
understood Azip@ to mean strike with a taser gun.