Damian Vasquez v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-214-CR

DAMIAN VASQUEZ APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant 
Damian Vasquez appeals his conviction for aggravated assault.  In seven issues, appellant complains that (1) the evidence is factually insufficient to support a finding that appellant did not act in self-defense, (2) the trial court erred by allowing a doctor and a police officer to opine that the complainant’s wounds were acquired while fleeing, (3) the trial court erred by overruling appellant’s objection to the prosecutor’s improper closing argument, (4) the trial court erred by overruling appellant’s motion to suppress the evidence seized from his car in violation of the Fourth Amendment and the Texas Constitution, and (5) the cumulative effect of the errors in the trial warrants a reversal of appellant’s conviction.  We affirm.

Appellant admits to having assaulted complainant with a knife.  He claims, however, that he stabbed complainant in self-defense.  The fight between appellant and complainant began earlier in the evening when complainant and his friends, Jennifer Ashworth and Dustin Mock, were driving home from a party on Interstate 35, and they encountered appellant and his friend, Santana Rodriguez.  An altercation followed, although there was conflicting testimony as to how it began: Ashworth claims that something hit her car, while Rodriguez claims that Ashworth cut him off and then something hit appellant’s car.  Appellant followed Ashworth to her apartment complex where the parties got out of their cars and began to physically fight.  While appellant and complainant were wrestling, appellant drew a knife and stabbed complainant several times. 

After the stabbing, appellant and Rodriguez fled the scene in appellant’s car, while Ashworth and Mock attended to complainant.  Police officers promptly arrived at the scene and detained appellant and Rodriguez as they were leaving the apartment complex.  Appellant admitted that he had been involved in a fight but denied that weapons were involved.  The officers recovered a nightstick and a bloody knife from appellant’s vehicle.  Later that night, Mock and Ashworth identified appellant and Rodriguez as the persons involved in the assault.   

In his first issue, appellant contends that the evidence is factually insufficient to support the jury’s implicit rejection of his self-defense theory because the record reflects that the complainant and Mock were the aggressors.  Additionally, appellant asserts that the evidence is factually insufficient because complainant and his friends had been drinking alcohol prior to the altercation, and the jury should have given no weight to their eyewitness testimony due to their diminished capacities. 

Both appellant and Rodriguez testified that complainant and his friends were the aggressors, that complainant had appellant in a headlock at the time of the stabbing, 
and that appellant tried to retreat but could not
. 
 Appellant stated that, while he was being choked, he was in fear for his life and therefore retrieved a knife from his pocket and stabbed complainant in the back of the leg.  He said he unintentionally wounded complainant’s shoulder as he was trying to get away.

Self-defense will justify the use of force “when and to the degree [a person] reasonably believes the force is immediately necessary to protect himself against the other’s use or attempted use of unlawful force.”
(footnote: 2)  When a defendant raises self-defense, he bears the burden of production, meaning that he must produce some evidence that supports his defensive theory.
(footnote: 3)  Once such evidence is produced, the State has the burden of persuasion to prove its case beyond a reasonable doubt.
(footnote: 4) 

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.
(footnote: 5)  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.
(footnote: 6) 
 Evidence can be factually insufficient in one of two ways: (1) the evidence is so weak as to be clearly wrong or manifestly unjust, or (2) the finding of a vital fact is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.
(footnote: 7) 
 

When an appellant challenges the factual sufficiency of the rejection of a defense, however, we employ a modified standard of review
 and we evaluate all the evidence in a neutral light and ask whether the State’s evidence, taken alone, is too weak to support the finding and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence.
(footnote: 8) 
 In conducting this review, we 
must give great deference to the jury’s assessment of witness credibility and determination of what weight should be assigned to conflicting testimony
.
(footnote: 9) 

The following evidence supports the jury’s guilty verdict:

Officer Chris Nixon, a corrections officer in Dallas County, who lived in the apartment complex where the fight took place and witnessed the incident from his upstairs balcony, stated that he saw appellant stab complainant, that appellant was standing over complainant, that complainant was slumped down, and that he appeared to be trying to get away.  He also stated that appellant was not in a headlock when he saw appellant stab complainant.   

Additionally, Dr. Randall Friese, an emergency trauma surgeon, testified that complainant was stabbed six times, at least one of which was in the back. Dr. Friese also gave his opinion that the wounds were consistent with someone fleeing an aggressor.  Officer Jeff Persinger, who responded to the call, further testified that complainant’s stab wounds to the back indicated that he was trying to get away. 

Further, complainant testified that appellant and his friend approached him when he got out of the car.  He testified that appellant stabbed him as he was trying to get away from appellant and that he never had appellant in a headlock.  Both Mock and Ashworth stated that they did not really see the fight between appellant and complainant because their attention was on the fight between Mock and Rodriguez.  

When viewed in a neutral light,
(footnote: 10) there is factually sufficient evidence from which a rational fact-finder could have found beyond a reasonable doubt that the appellant was not acting in self-defense.  
We decline to substitute our judgment for that of the jury on how much weight to give complainant and his friends’ testimony.
(footnote: 11) Accordingly, we overrule appellant’s first issue. 

In his second and third issues, appellant claims the trial court erred by allowing the opinion testimony of 
Dr. Friese and Officer Persinger that complainant’s wounds were consistent with someone fleeing an aggressor because their testimony violates rule 602's requirement that a witness must have personal knowledge of the matter to which he testifies and because the witnesses were not present during the assault.
(footnote: 12)  We review the trial court’s admission of evidence under an abuse of discretion standard.
(footnote: 13)  In determining whether the trial court abused its discretion, we must uphold the trial court’s ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case.
(footnote: 14)  The trial court will not be overturned as long as its ruling was within the zone of reasonable disagreement.
(footnote: 15) 

Rule 602 states that the personal knowledge requirement is subject to the provisions of rule 703.
(footnote: 16)  Rule 703 explicitly allows opinion testimony by expert witnesses to be based on “facts or data . . . perceived by, reviewed by, or made known to the expert at or before the hearing.”
(footnote: 17)  Appellant stipulated that Dr. Friese was qualified as an expert witness. 

 Thus, Dr. Friese could properly testify as to the cause of complainant’s injuries based on his knowledge, experience, and status as an expert witness. 

Likewise, Officer Persinger was also qualified as an expert witness.  He testified that he had been in the Military Police Corps Reserve 1985 and on active duty since from 1988 to 2000.  During this time, he testified that he received training in weapons, lifesaving, and first aid.  Before joining the Lewisville Police Department in 2000, he attended TECLOSE Academy.  Officer Persinger testified that he had previous experience with crime scenes and with stab victims.  Given this testimony, the trial judge was within his discretion in permitting Officer Persinger’s expert testimony based on his knowledge and experience.
(footnote: 18)  Therefore, the trial court did not abuse its discretion by allowing Officer Persinger to testify as to the cause of complainant’s injuries.  We overrule appellant’s second and third issues. 

In his fourth issue, appellant argues that the trial court erred by overruling appellant’s objection to the prosecutor’s improper closing argument.  The prosecutor stated, 

Let’s look at the additional requirements . . . And if a reasonable person in the defense of the situation would not have retreated.  That’s the second part of deadly force, would not have retreated. Would a reasonable person have retreated instead of stabbing an unarmed man six times? Did he have an opportunity to retreat? Sure.  He could have stopped anywhere along the way before he went down there.  He could have stayed in his car.  Anytime that he’s fighting, he could have stopped the fight, even if you believe his testimony.  He had numerous occasions that he could have retreated instead of resorting to deadly force.  

Appellant objected that this argument was a misstatement of the law because it implies that appellant could not rely on self-defense if he could have retreated at any time during the fight and because it miscast the timing of the duty to retreat, indicating that the duty exists along a continuum as opposed to an immediate situation.
(footnote: 19) 

Proper jury argument is confined to one of the following areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.
(footnote: 20)  It is not error for the State to quote or paraphrase the jury charge.
(footnote: 21)  An argument that contains a statement of law contrary to the jury charge, however, is error.
(footnote: 22)
 Appellant asserts, and the State agrees, that the duty to retreat arises when it becomes necessary for one to use deadly force and requires retreat from the immediate situation, if possible.
(footnote: 23)  Appellant, however, contends that the prosecutor’s argument improperly implies that he had a duty to retreat before the fight began and therefore it is a misstatement of the law.  The prosecutor, however, was asserting that even if the jury believed appellant’s testimony that complainant had him in a headlock, a reasonable person in his position would have retreated or stopped fighting instead of stabbing complainant.  This argument properly follows the law, which allows a person to use deadly force against another in certain situations “if a reasonable person in that situation would not have retreated.”
(footnote: 24)  Thus, the prosecutor’s argument, when taken in context and as a whole, was a proper statement of the law. Therefore, the trial court did not err by overruling appellant’s objection to the prosecutor’s argument and we overrule appellant’s fourth issue. 

In his fifth and sixth issues, appellant asserts that the trial court erred by failing to suppress the evidence seized by Officer Maly because the initial detention violated the Fourth Amendment and the Texas Constitution
(footnote: 25) in that it was based solely on an anonymous tip from a disturbance call.
(footnote: 26) 

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.
(footnote: 27)  In reviewing the trial court's decision, we do not engage in our own factual review.
(footnote: 28)  At a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 29)  Therefore, we give almost total deference to the trial court's ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
(footnote: 30)  We review de novo a trial court's ruling on mixed questions of law and fact if it does not turn on the credibility and demeanor of witnesses.
(footnote: 31)  When the trial court does not file findings of fact, the reviewing court assumes that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record.
(footnote: 32)
 Generally, law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest.
(footnote: 33)  To justify temporary detention, the officer must have specific articulable facts which, considering his experience and personal knowledge and his inferences from those facts, would reasonably warrant an intrusion on the freedom of the citizen stopped for investigation.
(footnote: 34) 

The articulable facts upon which Officer Maly relied when he detained appellant were as follows:

On the night of the offense, Officer Maly was responding to a disturbance call at the same apartment complex.  As he entered the apartment complex, he received a radio dispatch from Officer Persinger, who was already at the scene and talking to witnesses.  Officer Persinger related that two men involved in an altercation were fleeing the scene in a small Mitsubishi-type car.  As Officer Maly entered the complex through the gate, he saw a small Mitsubishi-type car occupied by two men leaving the complex.  Because the car and its occupants matched Officer Persinger’s description, Officer Maly followed and stopped the car.  When he approached appellant’s car, Officer Maly noticed a “nightstick-like club” in plain view and further detained the two men. 

Officer Maly’s suspicion was not based solely on an anonymous tip from a disturbance call, as appellant contends. Officer Maly received information describing appellant’s vehicle and its occupants from Officer Persinger who spoke with witnesses at the scene. This information was relayed to Officer Maly through a radio dispatch.  It is settled law that probable cause to detain for investigatory purposes may come from a police broadcast based on reliable information furnished by an otherwise credible, known private citizen whose only contact with the police or criminal activity results from having witnessed a criminal act.
(footnote: 35)  We overrule appellant’s fifth and sixth issues.

In his seventh issue, appellant argues that the cumulative effect of the errors in the above issues warrants a reversal of his conviction.  The doctrine of cumulative error, however, rarely results in reversal, and is predicated upon meeting the standard of reversible error.
(footnote: 36)  Additionally, because appellant has not shown any error in this case, the doctrine is inapplicable.
(footnote: 37)  Therefore, we overrule appellant’s seventh issue.  

Having overruled all of appellant’s issues, we affirm the trial court’s judgment
.

PER CURIAM

PANEL A: CAYCE, C.J.;
 HOLMAN and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 19, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. Penal Code Ann.
 § 9.31(a) (Vernon 2003).

3:
Saxton v. State
, 804 S.W.2d 910, 912-14 (Tex. Crim. App. 1991).

4:
Id
. 

5:
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).

6:
Id
. at 484. 

7:
Id
. at 484-85;
 
Zuliani v. State
, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003); 
Johnson  v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

8:
Zuliani
, 97 S.W.3d at 595; 
Johnson
, 23 S.W.3d at 16; 
Roy v. State
, 161 S.W.3d 30, 36-37 (Tex. App.—Houston [14th Dist.] 2004, no pet.). 

9:
Hanks v. State
, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004). 

10:
See 
Zuniga
, 144 S.W.3d at 481
(setting out the factual sufficiency standard)
.

11:
See Hanks
, 137 S.W.3d at  671; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

12:
Tex. R. Evid.
 602. 

13:
Burden v. State
, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).  

14:
Carrasco v. State
, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

15:
Id.

16:
Id
. 

17:
Tex. R. Evid.
 703. 

18:
See 
Tex. R. Evid.
 702; 
Sterling v. State
, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1213 (1991); 
Kerr v. State
, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.) (all concluding that no abuse of discretion occurred where the trial court allowed a police officer to testify as an expert after hearing his training and qualifications).  Additionally, appellant did not object to Officer Persinger’s qualifications as an expert; thus, he is precluded from challenging his qualifications on appeal.  
Tex. R. App. P.
 33.1(a).  

19:
See Fielder v. State
, 683 S.W.2d 565, 592 (Tex. App.—Fort Worth 1985), 
rev’d on other grounds
, 756 S.W.2d 309 (Tex. Crim. App. 1988) (stating that the duty to retreat arises when it becomes necessary for one to use deadly force and requires retreat “from the immediate situation, if possible.”).  Appellant does not argue that the jury charge was improper. 

20:
Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  

21:
Whiting v. State
, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). 

22:
Id. 
  

23:
Fielder
, 683 S.W.2d at 592; 
Young  v. State
, 530 S.W.2d 120, 123 (Tex. Crim. App. 1975).  “Situation” means the combination of circumstances at a given moment.  
Sternlight v. State
, 540 S.W.2d 704, 706 (Tex. Crim. App. 1976).

24:
Tex. Penal Code Ann.
 § 9.32(a)(2).

25:
The Texas Court of Criminal Appeals has, in fact, applied the 
Terry
 standards without a separate analysis under Texas law.
 See Brother v. State
, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005);
 Davis v. State
, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992). Therefore, we apply the same analysis to appellant’s federal and state claims. 

26:
See Hall v. State
, 74 S.W.3d 521, 527 (Tex. App.—Amarillo 2002, no pet.). 

27:
Carmouche v. State, 
10 S.W.3d 323, 327 (Tex. Crim. App. 2000);
 Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

28:
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). 

29:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  

30:
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
Best
, 118 S.W.3d at 861-62. 

31:
Johnson
, 68 S.W.3d at 652-53; 
Harrison v. State
, 144 S.W.3d 82, 85-86 (Tex. App.—Fort Worth 2004, pet. granted).

32:
Ross
, 32 S.W.3d at 855. 

33:
See Terry v. Ohio
, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); 
 Crockett v. State
, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).  

34:
Terry
, 392 U.S. at 21, 88 S. Ct. at 1879. 

35:
Rodriguez v. State,
 975 S.W.2d 667, 676 (Tex. App.—Texarkana 1998, pet. ref’d); 
see also
 
Brother
, 166 S.W.3d at 257 (stating that the factual basis for stopping a vehicle may be acquired from another person)
. 

36:
See Chamberlain v. State
, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (recognizing that a number of errors may be found harmful in their cumulative effect), 
cert. denied
, 528 U.S. 1082 (2000); 
see also 
Tex. R. App. P.
 44.2 (setting out the standards for reversible error); W. Wendell Hall, 
Standards of Review in Texas
, 34 
St. Mary’s
 L. J. 1, 24 (2002) (discussing how the doctrine of cumulative error is seldom used).  

37:
See Chamberlain
, 998 S.W.2d at 238 (stating that there must be a number of errors for the doctrine of cumulative error to apply); 
Barbee v. State
, No. 02-03-00480-CR, 2005 WL 1120011, at *3 (Tex. App.—Fort Worth May 12, 2005, no pet.) (not designated for publication) (citing 
Chamberlain
 for the same principle).