# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00031-CR

**Ellis Berry, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-07-200930, HONORABLE FRED A. MOORE, JUDGE PRESIDING

### O P I N I O N

A jury found Ellis Berry guilty of burglary of a habitation while attempting to commit or committing retaliation and, after finding a prior conviction true for enhancement purposes, assessed punishment at 45 years' imprisonment and a $5,000 fine. Berry appeals, arguing in two issues that (1) the evidence was legally insufficient to support the finding that he was committing or attempting to commit retaliation at the time of the offense and (2) that he was denied the effective assistance of counsel, due to a conflict of interest stemming from Berry's assault on defense counsel during trial. Because we hold that the evidence was legally sufficient to support the jury's retaliation finding and that Berry has not demonstrated that an actual conflict of interest adversely affected counsel's performance, we affirm the judgment of conviction.[1]

---

[1] After oral argument, both Berry and the State filed motions for leave to file supplemental letter briefs. These motions are hereby granted.

## BACKGROUND

On February 17, 2007, Berry was living with his mother in an Austin duplex, the other side of which was occupied by Latasha Cottrell, the complainant in this case, and her seven-year-old daughter. At approximately 5:30 that evening, Berry came to Cottrell's side of the duplex and began knocking on her door. Cottrell testified that because Berry was dressed only in a pair of shorts and "had his hands in his shorts," she refused to let him into her home. Cottrell's sister, Dominique,[2] who was also present in Cottrell's home that day, testified that after Cottrell asked Berry to leave, "she tried to close the door real quick," but Berry "stopped her from closing the door with his foot. As soon as she got the door closed and she locked it, he was beating on the door telling her to open the door." Cottrell warned Berry that she would call the police if he refused to leave. When Berry responded by knocking louder and kicking the door, Cottrell called the police.

Before the police arrived, Berry returned to his side of the duplex and swallowed approximately five "crack rocks." Berry himself testified to this at trial and explained that he did so for the purpose of avoiding a charge for drug possession. At some point after the police arrived, Berry was placed in an ambulance to be transported to a hospital due to his erratic behavior, presumably resulting from the crack cocaine he had swallowed. While Berry was in the ambulance, Cottrell, at the instruction of police officers, gave him a verbal warning that he was not to return to her property. Officer Richard Munoz, an officer dispatched to the scene, testified that it was Austin Police Department policy to require a verbal warning in the presence of police officers before

---

[2] Because Dominique Cottrell has the same last name as the complainant in this case, we will refer to her by her first name.

2

making an arrest for criminal trespass.[3]  *See* Tex. Penal Code Ann. § 30.05 (West Supp. 2008) (elements of criminal trespass).

At some point later in the evening, Berry returned from the hospital and made repeated angry phone calls to Cottrell's home in which he denied having knocked on her door earlier that day.  Cottrell testified, "[H]e was just telling me I didn't come over there knocking on the door and so forth and that why am I lying.  He was just saying . . . that I was lying and that he didn't knock on the door and so forth."  Cottrell further testified that the phone calls to her home continued until approximately twenty minutes before the burglary.

Shortly before midnight, Berry returned to Cottrell's side of the duplex, used a large rock to break her sliding glass door, and entered her home.  Both Cottrell and Dominique testified that when Berry entered the duplex, he was shouting angrily and threatening to kill Cottrell.  Dominique's boyfriend, Brandon Mapps, who was also present in the duplex at the time, blocked Berry's access to Cottrell and ultimately succeeded in removing him from the premises by force.  Meanwhile, Cottrell called the police for the second time that day.  When police officers arrived, Mapps flagged them down and pointed to Berry, who was attempting to flee on foot.  Officer Munoz, who had again been dispatched to the scene, caught up with Berry and arrested him after a brief struggle.

---

[3] Munoz testified:

> It's legal as well as policy for trespass notices the person must be clearly knowledgeable to the fact that they're not to return to that property.  So as state law says, the person must be aware of that.  And our policy confines it and makes it an even narrower scope that a police officer must be present to witness the verbal warning given and then we also document it.  That way if the situation does arrive that the person returns in violation of that, the person was clear from the beginning that he was not or she was not supposed to return to that property and it is a criminal offense.

Berry, testifying on his own behalf at trial, admitted to breaking Cottrell's sliding glass door with a rock, but maintained that he never actually entered her side of the duplex. Because Berry challenges only the retaliation finding on appeal and not his conviction for burglary, for purposes of this appeal we will assume that the facts support Berry's burglary conviction. When asked why he broke Cottrell's window, Berry stated, "Because, like I said, when I was in back of the ambulance going to the hospital, she came back over to the back of the ambulance and she said a remark like I don't want him back over here. . . . And that just sort of like, you know, made me mad, you know."

During the trial on the merits, Berry made a number of outbursts, prompting the trial court to have him removed for much of the proceedings. At one point while he was in the courtroom, Berry, outside the presence of the jury, requested a restraining order against his defense counsel. When this request was denied, Berry assaulted his attorney, hitting him in the face. Berry was quickly restrained and removed from the courtroom. The trial judge then questioned defense counsel, asking, "Do you believe—are you able to represent your client, even though he assaulted you here in the courtroom, to the best of your ability and provide him all the expertise that is necessary and adequate to do so, sir?" Counsel responded, "Yes, sir, I am." Over defense counsel's objection, the State introduced evidence of the assault as an extraneous offense during the punishment phase of trial.

The jury convicted Berry of both burglary while attempting to commit or committing retaliation and burglary with the intent to commit assault. The trial court proceeded to punishment on the charge with the highest punishment range—burglary while attempting to commit

4

or committing retaliation—and the jury assessed punishment at 45 years' imprisonment and a $5,000 fine.

## STANDARDS OF REVIEW

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

When determining whether counsel was ineffective due to a conflict of interest, we look to whether the appellant has established "that an actual conflict of interest existed and that trial counsel actually acted on behalf of those other interests during the trial." *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007). In other words, the appellant must show that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

## DISCUSSION

As a preliminary matter, we note that Berry, who is represented by appointed counsel on appeal, has submitted a number of pro se filings raising additional appellate arguments. A criminal defendant has no right to hybrid representation, and our review of Berry's pro se filings does not reveal an error that should be considered in the interests of justice. *See Rudd v. State*,

616 S.W.2d 623, 625 (Tex. Crim. App. 1981). As a result, we need not address Berry's pro se arguments on appeal and shall proceed with the issues raised by appellate counsel. *See id.*

*Retaliation*

In his first issue on appeal, Berry argues that the evidence is legally insufficient to support the jury's finding that he entered Cottrell's home while committing or attempting to commit retaliation. The jury was instructed on retaliation according to section 36.06(a)(1)(B) of the penal code, which states that a person commits retaliation if he threatens to harm another by an unlawful act "in retaliation for or on account of the service or status of another as a . . . person who has reported or who the actor knows intends to report the occurrence of a crime." Tex. Penal Code Ann. § 36.06(a)(1)(B) (West Supp. 2008). While the State asserts that Berry retaliated against Cottrell because she intended to report him for criminal trespass, Berry argues that he did not commit the offense of criminal trespass prior to the burglary, and therefore he could not have retaliated against Cottrell for intending to report a crime that had not occurred. *See In re K.H.*, 169 S.W.3d 459, 464 (Tex. App.—Texarkana 2005, no pet.) (holding that retaliation statute refers to report of "the occurrence of 'a crime,'" rather than "an act that a person might reasonably believe to be a crime"). To support this contention, Berry points to the fact that the police officers who arrived on the scene after Cottrell's first call did not arrest him for criminal trespass because he had not yet received a verbal warning in the presence of a police officer.

Despite Berry's assertions to the contrary, the police officers' determination that they could not make an arrest in the absence of a verbal warning given in their presence was based on department policy, rather than the requirements of the penal code. In Munoz's testimony, he

6

acknowledged that the department's internal policy of requiring a verbal warning in the presence of an officer is narrower than the statutory elements of criminal trespass. Under section 30.05 of the penal code, criminal trespass occurs when a person "enters or remains on or in property . . . of another without effective consent" and that person "had notice that the entry was forbidden" or "received notice to depart but failed to do so." Tex. Penal Code Ann. § 30.05(a). Notice is defined, in relevant part, as "oral or written communication by the owner or someone with apparent authority to act for the owner." *Id.* § 30.05(b)(2)(A). Noticeably absent is any requirement that a verbal warning be given in the presence of a police officer. Under the plain language of the statute, Cottrell's requests that Berry leave her property when he knocked on her front door constituted notice that Berry did not have her consent to enter the property.

While the evidence supports a finding that Berry was on notice that he did not have Cottrell's consent to enter her property, one element of criminal trespass appears to be lacking in the facts of this case. The criminal trespass statute defines "entry" as "the intrusion of the entire body." *Id.* § 30.05(b)(1). While Dominique testified that Berry placed his foot in the door when Cottrell attempted to close it, there is no evidence that Berry succeeded in entering Cottrell's home with his entire body.[4] However, Berry's attempt to enter Cottrell's home by placing his foot in the door, after receiving notice that he did not have effective consent, is sufficient to establish the elements of *attempted* criminal trespass. *See Aguilar v. State*, 682 S.W.2d 556, 559 (Tex. Crim. App. 1985)

---

[4] No evidence was presented at trial regarding Cottrell's right of possession, if any, to the outside area surrounding the door to her side of the duplex. *See* Tex. Penal Code Ann. § 1.07(a)(35)(A) (West Supp. 2008) (defining "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor").

7

(Clinton, J., dissenting) (stating that elements of attempted criminal trespass are present when "one intends to enter a building of another without effective consent, having notice that entry is forbidden, and goes beyond preparing to do so") As a result, all of the elements of attempted criminal trespass were present when Berry attempted to enter Cottrell's property by placing his foot in the door after receiving notice that he did not have consent to enter.

In Berry's testimony, he stated that he broke Cottrell's window because he was angry at her for telling police officers that she did not want him on her property. Both Cottrell and her sister testified that when Berry burglarized Cottrell's home a few hours after his attempted criminal trespass—for which Cottrell had called the police—Berry was shouting angrily and making threats on her life. Cottrell also testified that Berry made repeated threatening phone calls to her home in the time between his attempted criminal trespass and the burglary. In light of this evidence, viewed in the light most favorable to the verdict, we hold that a rational jury could have determined beyond a reasonable doubt that Berry burglarized Cottrell's home in retaliation for her intent to report him for the offense of attempted criminal trespass. The evidence is therefore legally sufficient to uphold the jury's retaliation finding. *See Swearingen*, 101 S.W.3d at 95. Berry's first issue is overruled.

*Ineffective Assistance of Counsel*

In his second issue on appeal, Berry argues that he was denied the effective assistance of counsel during the punishment phase because a conflict of interest arose when the State presented evidence of Berry's assault on counsel. This evidence consisted of a video recording of the assault, as well as testimony from a sheriff's deputy who witnessed the incident. Berry takes the position that counsel's status as the victim of an extraneous offense created an actual conflict of interest that adversely affected counsel's performance.

8

Upon learning that the State intended to offer evidence of the assault as an extraneous offense, defense counsel immediately objected, emphasizing that he did not wish to file assault charges against Berry, that he had not received prior notice that such evidence would be introduced, and that "it's of such a highly prejudicial nature and creates such a paradox of problems for me to effectively represent him that I think it would be improper to present that to the jury." Counsel objected again at the time the video was offered as evidence, stating, "I object on the basis of relevance. Also, it's not an accurate recording because it doesn't have the sound and it also doesn't—it's one of those that doesn't show all the movements. It's just a time lapse." Each of these objections was overruled. In cross-examining the deputy who witnessed the assault, counsel confirmed that he had not required medical attention and had informed the deputy that he did not wish to press charges. Finally, in his closing statement, counsel suggested that the assault was an indicator of "serious mental health issues," which should be taken into consideration in assessing punishment.

While claims of ineffective assistance of counsel are usually analyzed under the *Strickland* standard, which requires the appellant to establish that, but for counsel's unprofessional errors, the result of the proceeding would have been different, *see Strickland v. Washington*, 466 U.S. 668, 694 (1984), a lower standard applies when the claim of ineffective assistance is based on an alleged conflict of interest. *Acosta*, 233 S.W.3d at 352-53. In order to prevail on an ineffective-assistance claim based on a conflict of interest, the appellant must show that counsel "actively represented conflicting interests" and that counsel's performance at trial was "adversely affected" by the conflict. *Cuyler*, 446 U.S. at 349-50.

In light of this standard, we must first address whether trial counsel actively represented conflicting interests in the punishment phase of trial. Berry argues that counsel was conflicted by his own self-interest as a victim of an extraneous offense, but fails to explain how counsel, who stated on the record that he did not wish to press charges, could personally benefit from admission of the assault evidence. Therefore, it is not readily apparent how counsel's self-interest conflicted with his representation of Berry. The record, far from indicating that counsel actively represented his own self-interest, reflects that counsel consistently represented Berry's interests by objecting to evidence of the assault and attempting to minimize its effect on the jury, as described above. Because Berry has not established that his trial counsel actively represented his own self-interest during the punishment phase of trial, his ineffective-assistance claim fails. *See Cuyler*, 446 U.S. at 249. Berry's second issue on appeal is overruled.

**CONCLUSION**

Because we have determined that the evidence was legally sufficient to support the jury's finding of retaliation and that Berry did not receive ineffective assistance of counsel, we affirm the judgment of conviction.

_____

Before Justices Waldrop, Henson and Onion*

Affirmed

Filed: February 4, 2009

Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).