# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00345-CR

**William Whittington Roberts, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-07-206717, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following a bench trial, the district court convicted appellant William Whittington Roberts of the offense of attempting to obtain a controlled substance by fraud. *See* Tex. Health & Safety Code Ann. § 481.129(a)(5) (West 2003). Roberts pleaded true to an enhancement paragraph alleging a prior felony conviction for the offense of possession of a controlled substance, and the district court assessed punishment at seven years' imprisonment. In three points of error, Roberts asserts that the evidence is legally and factually insufficient to sustain the conviction and that the district court committed "fundamental error" by not sua sponte excluding certain evidence.[1] Although we will overrule each of Roberts's points, we have noticed that the written judgment

---

[1] After appellant's brief was filed, this Court received a supplemental pro se brief raising additional arguments. However, a criminal defendant has no right to hybrid representation or to represent himself on direct appeal. *Scheanette v. State*, 144 S.W.3d 503, 505 n.2. (Tex. Crim. App. 2004). Accordingly, we will not address any of Roberts's pro se points. *See id*.; *Berry v. State*, 278 S.W.3d 492, 495 (Tex. App.—Austin 2009, pet. ref'd).

contains a clerical error with respect to the applicable subsection of the statute under which Roberts was convicted. We will modify the judgment to reflect the correct subsection of the statute under which Roberts was convicted and, as modified, affirm.

## BACKGROUND

Roberts was indicted for knowingly attempting to possess or obtain a controlled substance, namely hydrocodone, by misrepresentation, to wit: by giving false names and birth date for the purposes of treatment. *See id*. § 481.129(a)(5)(A). The district court heard evidence that, on November 9, 2007, Roberts attempted to obtain a prescription for narcotic pain medication from two different hospitals in Austin. Dr. Rex Medford, an emergency room physician at St. David's Hospital, testified that Roberts was admitted to the hospital complaining of a "sudden onset of testicular pain." According to Medford, at registration, Roberts identified himself as "Michael Robertson" and provided a birth date of July 18, 1970. Roberts's actual date of birth is February 5, 1965. Roberts also provided a social security number. When hospital staff entered this number into the hospital computer system, the name Roberts provided did not appear in the hospital computer. At that point, the hospital staff asked Roberts for identification, which, according to Medford, Roberts "did not have."

Nevertheless, the hospital began treating Roberts. Medford testified that a nurse alerted him to the fact that Roberts had possible "track marks" on his arms "that would be consistent with IV drug use." Medford asked Roberts if he could look at his wrists and then asked him "what happened, without accusation." According to Medford, Roberts volunteered, "'I don't use drugs,' and that made me a little suspicious." Medford then ordered an ultrasound, which Roberts declined.

2

"And at that point in time," Medford explained, "he told me that he was a heroin addict." Medford asked Roberts "if he was really having pain or if he just said that to get drugs." According to Medford, Roberts told him "that he was just trying to get some medication." Medford then canceled the ultrasound and offered Roberts "social work consultation to help him with his drug problem." Roberts's response to this offer, Medford testified, was "to bargain for medication which I denied." Roberts then "signed out against medical advice" and left the hospital at approximately 3:05 p.m.

At approximately 3:30 p.m., Roberts checked into Seton Medical Center. This time, Roberts identified himself as "William Whittington" and provided a date of birth of February 7, 1970. Dr. John Berdolla, the emergency room physician assigned to Roberts, testified that Roberts had complained of a toothache. Although Berdolla observed that Roberts had a decayed tooth, he noted that Roberts "didn't have any signs of pain or distress." Berdolla also noticed that Roberts "had a kind of guarded affect" and "did not have any form of ID present with him or available." His suspicion aroused, Berdolla checked "a public database to see if there was a record of someone with the name of William Whittington and that date of birth, and there was nobody." Berdolla asked Roberts about this, and Roberts claimed that he had "made a mistake" and "that his name was William Whittington Roberts." Berdolla then ran this name through the database. He recalled, "I didn't look at the specific birth date, but there was a close enough match that I gave him the benefit of the doubt." Berdolla then wrote Roberts a prescription for Vicodin, which is a combination of hydrocodone and acetaminophen. Roberts was then discharged from the hospital, and Berdolla observed that Roberts "was in a real hurry to leave."

3

Shortly thereafter, Berdolla testified, he learned from a paramedic that Roberts had been seen earlier that day at another emergency room registering "under a clearly different name" and presenting "a different chief complaint." Berdolla then began calling local pharmacies to cancel the prescription he had given Roberts. Berdolla eventually learned that Roberts was at the pharmacy located inside Seton, and he asked the emergency room security officer, Chris Rybarski of the Austin Police Department, to locate and apprehend Roberts.

Officer Rybarski testified that, after he had located Roberts, he asked for Roberts's identification. Roberts was unable to produce a photo ID, but he did inform Rybarski that his name was William Roberts and that his date of birth was February 5, 1965. Rybarski then asked Roberts to accompany him back to the emergency room. Once they arrived, Rybarski called dispatch and ran a background check on Roberts. Dispatch informed Rybarski that Roberts had an outstanding warrant out of Dallas County for a probation violation. When Rybarski asked Roberts if he was aware of this, Roberts confirmed that he was. At this point, Rybarski testified, Roberts was under arrest and was not free to leave. Rybarski then went to the front desk and asked to look at Roberts's registration form. The front desk personnel provided Rybarski with the registration form, and Rybarski observed that the name and date of birth provided on the form was "William Whittington, 2/7 of '70." Roberts's last name was nowhere on the form, nor was his correct date of birth. Rybarski took the form back to Roberts and asked him if he had filled it out. "And at that point," Rybarski recalled, "he said he had nothing further to say." Dr. Berdolla, who was present during this conversation, took the prescription slip from Roberts, ripped it to pieces, and threw it away. However, after Rybarski informed Berdolla that the slip might be needed as evidence, he and

4

Rybarski retrieved it from the trash and taped it back together.[2] Rybarski also testified that, upon further investigation, he learned that Roberts had registered at Seton Medical Center on other occasions using three different birth dates and three different social security numbers.

After Rybarski testified, the State rested its case. Roberts then asked for a "directed verdict," which the district court denied. The defense then rested its case without calling any witnesses. The district court found Roberts guilty as charged, and the case proceeded to punishment. Roberts pleaded true to the enhancement allegation, and the district court sentenced him to seven years' imprisonment. This appeal followed.

## ANALYSIS

**"Fundamental error"**

We first address Roberts's third point of error, in which he claims that the district court committed "fundamental error" by not sua sponte excluding certain evidence. First, Roberts asserts that the district court should not have admitted "backdoor hearsay" testimony that Dr. Berdolla overheard a comment by an unidentified paramedic that the paramedic had seen Roberts leave another hospital's emergency room earlier that day. Second, Roberts claims that the district court should not have admitted Roberts's medical records that Officer Rybarski obtained, according to Roberts, in violation of the Health Information Privacy and Portability Act (HIPPA). The State, observing that Roberts did not present either of these complaints to the district court,

---

[2] The taped-together prescription slip was admitted into evidence at trial, as was the registration form, Roberts's medical records from St. David's, and his medical records from Seton.

5

argues that Roberts failed to preserve error and that a trial court's ruling on the admissibility of evidence does not constitute "fundamental error."

We agree with the State. In most circumstances, a party raising a complaint on appeal must have made a timely and specific objection in the trial court and the court must have ruled on the objection. Tex. R. App. P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, . . . all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez*, 138 S.W.3d at 342. The court of criminal appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002). "This is true even though the error may concern a constitutional right of the defendant." *Id*. While it is true that nothing in the rules of evidence "precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court," Tex. R. Evid. 103(d), the evidence of which Roberts complains does not rise to that level. *See, e.g.*, *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (holding that erroneous admission of hearsay is not fundamental error and must be preserved at trial); *Holland v. State*, 802 S.W.2d 696, 700 (Tex. Crim. App. 1991) (holding that violation of confrontation clause must be preserved by timely and specific objection at trial); *Lopez v. State*, 482 S.W.2d 179, 182 (Tex. Crim. App. 1972) ("[T]here must be a timely objection to preserve error of illegally obtained evidence."). Because

6

Roberts did not present his evidentiary complaints to the district court, he has failed to preserve error, and there is nothing for this Court to review. *See* Tex. R. App. P. 33.1(a).[3]

We overrule Roberts's third point of error.

**Evidentiary sufficiency**

In his first and second points of error, Roberts asserts that the evidence is legally and factually insufficient to support his convictions. In a legal sufficiency review, we consider whether, after viewing the evidence in the light most favorable to the finding of guilt, a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "This standard accounts for the factfinder's duty 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Clayton*, 235 S.W.3d at 778 (quoting *Jackson*, 443 U.S. at 319). It is not necessary that every fact point directly and independently to the defendant's guilt, but it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

---

[3] The only case Roberts cites for his argument that the admission of evidence constitutes fundamental error is *Blue v. State*, 41 S.W.3d 129 (Tex. Crim. App. 2000). In *Blue*, a plurality of the court of criminal appeals ruled that a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *Id*. at 132. *Blue* is not binding precedent. *Peavey v. State*, 248 S.W.3d 455, 471 (Tex. App.—Austin 2008, pet. ref'd). Moreover, Roberts fails to show how a trial court's inaction in not sua sponte excluding supposedly inadmissible evidence is comparable to a trial court's action in making comments that taint a defendant's presumption of innocence.

In a factual sufficiency review, we consider whether, after viewing the evidence in a neutral light, a rational trier of fact was justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). A finding of guilt should be set aside only if the evidence supporting the finding is so weak as to render the finding clearly wrong or manifestly unjust. *See id*. at 705; *Korell v. State*, 253 S.W.3d 405, 412 (Tex. App.—Austin 2008, pet. ref'd). Therefore, we will not reverse a judgment on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the finding of guilt. *Watson*, 204 S.W.3d at 417.

In this case, the State was required to prove beyond a reasonable doubt that Roberts knowingly attempted to possess or obtain a controlled substance, namely hydrocodone, by misrepresentation. *See* Tex. Health & Safety Code Ann. § 481.129(a)(5)(A). According to Roberts, "no clear evidence was offered to unequivocally establish that the Appellant misrepresented himself in order to obtain a prescription," and, even if there was, it "is too weak in itself and too controverted by other evidence to support the conviction." We disagree.

Dr. Medford testified that, at St. David's, Roberts provided a false name, "Michael Robertson," and an incorrect date of birth. Roberts's medical records from St. David's confirm that these misrepresentations were made. Also, Roberts claimed to be suffering from testicular pain but, when asked by Medford "if he was really having pain or if he just said that to get drugs," Roberts, according to Medford, admitted "that he was just trying to get some medication" and then attempted to "bargain" for medication. The district court could have reasonably inferred

8

from this evidence that Roberts, through his misrepresentations, was attempting to obtain a controlled substance.

The district court could have also found that Roberts continued to make misrepresentations when he arrived at Seton and that he persisted in doing so until after he had obtained a prescription from Dr. Berdolla. According to Berdolla, Roberts registered under the name "William Whittington"—completely omitting his last name from the registration form—and provided an incorrect date of birth. The registration form that was admitted into evidence confirms these misrepresentations. It was not until after Berdolla was unable to find a "William Whittington" in the database that Roberts disclosed his full name. Even then, Roberts did not correct the earlier misrepresentation that he had made about his date of birth. The label on the prescription slip shows both the incorrect date of birth and the incorrect last name. Also, Roberts complained of a toothache, a claimed condition quite distinct from the testicular pain of which Roberts had complained at St. David's less than an hour earlier. The district court could have found that this was another misrepresentation that Roberts had made in order to obtain a controlled substance, especially in light of Berdolla's testimony that Roberts "didn't have any signs of pain or distress."

Viewing the above evidence in the light most favorable to the finding of guilt, the district court could have found that, beginning when he checked into St. David's and continuing until he obtained a prescription from Dr. Berdolla at Seton, Roberts attempted to obtain a controlled substance by misrepresentation. Thus, the evidence is legally sufficient to sustain the conviction. *See Oler v. State*, 998 S.W.2d 363, 369-70 (Tex. App.—Dallas 1999, pet. ref'd, untimely filed) (explaining that statute imposes affirmative legal duty on one obtaining controlled substance to do

so without engaging in "misrepresentation, fraud, forgery, deception, or subterfuge" and that defendant's intent to obtain controlled substance by fraud may be proved by circumstantial evidence).

We reach the same conclusion when considering the evidence in a neutral light. Roberts claims that he mistakenly omitted his last name from the registration form, perhaps due to hospital staff hastily assisting Roberts in filling out the form. Roberts also points to an addendum by Dr. Berdolla attached to his emergency room report in which Berdolla wrote, "The patient presented with what appears to have been either an unintentional or intentional use of a different name." Roberts urges that the omission was unintentional. However, it would not have been against the great weight and preponderance of the evidence for the district court to conclude otherwise. Berdolla testified that the patient fills out the registration form himself. In the space for his last name, Roberts wrote "Whittington," completely omitting his actual last name from the form. And, even if hospital staff had assisted Roberts in filling out the form and mistakenly omitted his last name, this would not explain the incorrect date of birth that was also on the form. Additionally, Officer Rybarski testified that Roberts had previously appeared at Seton and provided incorrect information in an attempt to obtain medication. According to Rybarski, Roberts had registered at Seton on other occasions using three different birth dates and three different social security numbers. The district court could have reasonably inferred that this evidence tended to negate some sort of good-faith error or miscommunication and instead tended to prove that Roberts's misrepresentations on the registration form were intentional. As for Berdolla's initial uncertainty about whether the omission was intentional or unintentional, we observe that there is a second, later addendum

10

attached to the emergency room report in which Berdolla unequivocally expresses his belief that the omission was intentional: "It turned out that he had given a false name on arrival and it was confirmed by looking at the original registration sheet that he had written William Whittington, not that he had written William Whittington Roberts or anything that might be construed as a mistake at registration." Moreover, the evidence tending to show that Roberts misrepresented himself at St. David's supports a finding by the district court that Roberts similarly misrepresented himself at Seton. Based on this and other evidence, we cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the finding of guilt. Thus, the evidence is factually sufficient to sustain the conviction.

We overrule Roberts's first and second points of error.

**Incorrect statute referenced in judgment**

Finally, we observe that while the written judgment identifies section 481.129, subsection (a)(4), of the health and safety code as the statute under which Roberts was convicted, Roberts was actually charged and convicted under subsection (a)(5) of the statute. The appropriate remedy is to modify the district court's judgment to reflect the correct statute. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Nicholas v. State*, 56 S.W.3d 760, 767 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

11

## CONCLUSION

We modify the district court's judgment to reflect that the "Statute for Offense" was "Section 481.129(a)(5), Health and Safety Code." As modified, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Modified and, as Modified, Affirmed

Filed: April 1, 2010

Do Not Publish