TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00710-CR






Charles Bishop, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. D-1-DC-08-203263, HONORABLE DONALD LEONARD, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted appellant Charles Bishop of the offense of unauthorized use of
a motor vehicle. See Tex. Penal Code Ann. § 31.07(a) (West 2003). Punishment was assessed at
fourteen years' imprisonment. This appeal followed. In two issues on appeal, Bishop challenges
the factual sufficiency of the evidence and asserts that the district court abused its discretion in
excluding certain evidence. (1) We will affirm the judgment.




ANALYSIS

Factual sufficiency

 In his first issue, Bishop asserts that the evidence is factually insufficient to support
his conviction. Specifically, Bishop claims that the evidence was factually insufficient to overcome
his defensive theory of mistake of fact.

 In a factual sufficiency review, an appellate court views the evidence in a neutral light
to determine whether the jury's verdict of guilt was rationally justified. See Lancon v. State,
253 S.W.3d 699, 705 (Tex. Crim. App. 2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim.
App. 2007); Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Reversal for factual
insufficiency occurs only when: (1) the evidence supporting the verdict is so weak the verdict
seems clearly wrong and manifestly unjust; or (2) there is some objective basis in the record that
shows the great weight and preponderance of the evidence contradict the jury's verdict. See Berry
v. State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Roberts, 220 S.W.3d at 524; Watson,
204 S.W.3d at 417.

 A person commits the offense of unauthorized use of a motor vehicle if he
intentionally or knowingly operates another's motor-propelled vehicle without the effective consent
of the owner. Tex. Penal Code Ann. 31.07(a). Thus, the State was required to show not only that
Bishop intentionally or knowingly operated the vehicle, but that Bishop knew he did not have the
consent of the owner. See McQueen v. State, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Bishop
does not dispute that he intentionally or knowingly operated the vehicle. He claims, however, that
the State failed to prove that he knew he did not have consent of the owner. In other words, Bishop
is arguing that he mistakenly believed that he had consent to operate the vehicle.

 It is a defense to prosecution that the actor through mistake formed a reasonable
belief about a matter of fact if his mistaken belief negated the kind of culpability required for
commission of the offense. Tex. Penal Code Ann. § 8.02 (West 2003). A belief is reasonable if it
is one that would be held by an ordinary and prudent person under the same circumstances
as the actor. Winkley v. State, 123 S.W.3d 707, 712 (Tex. App.--Austin 2003, no pet.). As with
other defenses, the defendant bears the initial burden to produce some evidence that supports his
theory of mistaken belief. See Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); Saxton
v. State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991); Roy v. State, 161 S.W.3d 30, 35
(Tex. App.--Houston [14th Dist.] 2004, no pet.). Once the defendant produces such evidence, the
State then bears the burden of persuasion to disprove the raised defense. Zuliani, 97 S.W.3d at 594.
However, the burden of persuasion "is not one that requires the production of evidence, rather
it requires only that the State prove its case beyond a reasonable doubt." Id. "When a jury finds the
defendant guilty, there is an implicit finding against the defensive theory." Id.

 In this case, the jury heard evidence that on June 1, 2008, Bishop entered an unlocked
vehicle parked on Sabine Avenue in downtown Austin. Unbeknownst to Bishop, the vehicle was
a "bait car" owned by the Austin Police Department as part of its Bait Vehicle Program. (2) As soon
as Bishop entered the vehicle, a camera inside the vehicle began recording. The camera recorded
Bishop rummaging through the car for approximately two minutes, then getting into the driver's seat
and starting the vehicle, and driving away. Approximately seven minutes later, the camera recorded
Bishop park the vehicle, turn off the engine, and remain inside. Shortly thereafter, the camera
recorded Bishop being arrested. A copy of the video recording was admitted into evidence and
played for the jury. Also admitted into evidence and considered by the jury were video recordings
of two previous entries by Bishop into the same bait vehicle on May 30 and May 31, 2008. In the
recordings, Bishop can be seen rummaging through the vehicle for several minutes and examining
items left inside such as papers, candles, and shoes. 

 The arresting officer was Officer Vernon Stevenson of the Austin Police Department,
who was also identified in the indictment as the "owner" of the vehicle. Stevenson testified that he
had authority over the vehicle, did not give consent for Bishop to enter the vehicle, and was not
aware of anyone else giving Bishop consent to enter the vehicle. 

 Bishop testified in his defense. According to Bishop, he is homeless, and his way of
making money is to "assist[] people who go to Sixth Street to party in parking their vehicles." 
Bishop explained that he would offer to park or retrieve someone's vehicle and, in return, the driver
of the vehicle would usually give him a "tip" of one or two dollars. On the night in question, Bishop
claimed, he was approached by a "Mr. Feliciano" who asked Bishop to help locate his vehicle in
exchange for twenty dollars. Bishop testified that he agreed and proceeded to walk to the area where
"Mr. Feliciano" said the vehicle could be found. Bishop explained,


So I wandered to the vehicle and I opened the door and the keys were right on the
console. And I got in the vehicle. And as you saw, I checked it out and around and
started the vehicle and drove the vehicle directly past the police station right up to the
hill where I had left Mr. Feliciano. I got there and parked the vehicle and that's when
I was arrested.


When asked if he had any information as to who this "Mr. Feliciano" was, Bishop testified, "Other
than speculation, no, I don't." Bishop described him as an intoxicated Hispanic male, "short, kind
of heavyset," and an "older man." Bishop claimed that, upon his arrest, he had informed the officers
about Feliciano and told them that he "had been given permission to drive the vehicle."

 According to Bishop, on the two prior occasions he had entered the vehicle, he
thought the vehicle had been stolen or abandoned and was looking inside the vehicle "for
identification to the owner of the vehicle so that I could contact them possibly to receive a reward
for getting their vehicle returned to them." Each time the camera recorded him searching through
the vehicle, Bishop claimed, he was merely looking for the owner's identification.

 On cross-examination, Bishop admitted to prior felony convictions for unauthorized
use of a motor vehicle, aggravated theft, credit card abuse, and possession of a controlled substance.
Bishop also admitted that, during a prior conversation with the prosecutor in which the prosecutor
had showed Bishop the video recording of his entries into the vehicle, Bishop "hung his head" and
nodded when the prosecutor told him, "The jig is up, Charles. You're busted. You're a liar and we
all know it." Bishop denied, however, that he was lying about what had happened.

 The jury, as the sole judge of the credibility of the witnesses and the weight to be
given their testimony, was free to disbelieve Bishop's version of events and to credit the testimony
of the arresting officer that neither he nor anyone else gave Bishop permission to enter the vehicle.
See McQueen, 781 S.W.2d at 605. The State attacked Bishop's credibility extensively during cross-examination, and Bishop was unable to provide much information regarding the identity of
the alleged "Mr. Feliciano." More importantly, the jury saw Bishop enter the bait vehicle on
three separate occasions, search through the vehicle each time, and, on the third occasion, drive
the vehicle for approximately seven minutes. The jury could have found that the video evidence,
combined with Officer Stevenson's testimony regarding lack of consent, satisfied the State's
burden of proof. In finding Bishop guilty of the offense, the jury implicitly rejected his mistake-of-fact defense. We cannot say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict or that the verdict is clearly wrong or
manifestly unjust.

 We overrule Bishop's first issue.


Evidence admissibility

 In his second issue, Bishop asserts that the district court abused its discretion in
excluding evidence "regarding the motivation of the authorities to prosecute the case against him."
According to Bishop, Austin Police Department officers "were conspiring to frame him for the crime
in question, rather than face the prospect of being sued by Mr. Bishop for various tort claims."
Bishop wanted to provide testimony to that effect. The district court did not allow him to do so,
finding the proferred evidence to be not relevant. On appeal, Bishop argues that the exclusion of the
evidence violated Rule 404(b), which allows for the admission of extraneous offense evidence for
certain purposes, including to show the motive and bias of witnesses other than the defendant. See
Tex. R. Evid. 404(b); Castaldo v. State, 78 S.W.3d 345, 349 (Tex. Crim. App. 2002).

 In a hearing outside the presence of the jury, Bishop explained the nature of the
evidence he wanted to introduce. He recalled that in September 2007, while he was "assisting" an
intoxicated individual on Sixth Street, he was assaulted by a man who, according to Bishop, was a
suspect in several robberies. Bishop claimed that as a result of his actions in identifying the man in
a lineup, the man was later apprehended. Bishop then proceeded to describe a subsequent assault
against him that had allegedly occurred outside a homeless shelter. When asked how this assault was
connected to the Austin Police Department, Bishop explained that the Department "has a presence
there at the [shelter] facility and office" and was involved in investigating the assault. According
to Bishop, the Department, after reviewing videotape footage of the incident, believed Bishop was
the responsible party and had decided not to file charges against Bishop's alleged assailant.

 Bishop claimed that the Department was afraid that he would file a lawsuit against
the Department "for covering up the assault and not pursuing to take charges against this man,
assaulting me, as well as I might file suit against [the homeless shelter] staff themselves." Bishop
was asked by his counsel, "You think that because these cops are afraid of civil liability, that's why
they have it in for you?" Bishop answered, "Exactly. . . ." The district court interjected, "Well, do
we have any evidence that the people who observed that on that film and the officer who stopped
you was involved in this in any way? Do you have any evidence those people were part of the
conspiracy?" Bishop responded, "Well, see that's the problem. We had no investigation to discover
the possibility--possibility of this evidence based on no investigation. We can only speculate." The
district court then excluded the evidence on the basis of relevance. Later, Bishop also attempted to
speculate during his testimony that "Mr. Feliciano" may have been an undercover police officer. The
district court also excluded this testimony as not relevant.

 We review a trial court's decision to admit or exclude evidence for an abuse of
discretion. Ramos v. State, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court abuses
its discretion when its decision "is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree." McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim. App.
2005) (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). 

 We first observe that Bishop failed to object on the basis of Rule 404(b) during trial.
To preserve a complaint for appellate review, the record must show that the complaining party
"stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds were apparent from the
context." Tex. R. App. P. 33.1(a)(1). "[I]t is not enough to tell the judge that evidence is admissible.
The proponent, if he is the losing party on appeal, must have told the judge why the evidence was
admissible." Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Thus, the complaining
party on appeal must have "brought to the trial court's attention the very complaint that party is now
making on appeal." Id. At trial, Bishop merely argued that the evidence was relevant to show that
the police had engaged in a conspiracy to frame him. He did not argue that the evidence was
admissible under Rule 404(b) to show the motive and bias of the witnesses against him. Thus, he
has failed to preserve error.

 However, even assuming that Bishop had preserved error, we cannot conclude on
this record that the district court abused its discretion in excluding the evidence. The district court
excluded the evidence as not relevant. "Relevant evidence" means evidence having any tendency
to make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence which
is not relevant is inadmissible. Tex. R. Evid. 402. Here, as the district court observed, the proferred
evidence had no relevance to the issue of whether Bishop had committed the offense of unauthorized
use of a motor vehicle. Bishop provided no evidence that the testifying officers were involved with,
or even aware of, the events that Bishop described. As Bishop admitted, the officers' connection to
the alleged police conspiracy against him was purely speculative. Nor is there any indication in
the record that Bishop was "set up" by an undercover officer posing as "Mr. Feliciano." On cross-examination, both of the testifying officers were asked if they knew of a police officer named
Feliciano. Both testified that they did not. Thus, the district court did not abuse its discretion in
finding that the proferred evidence had no tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence.

 Nor would the district court have abused its discretion in excluding the evidence
under Rule 404(b). To be admissible under Rule 404(b), the proferred evidence must, among
other requirements, survive a balancing test under Rule 403. See Castaldo, 78 S.W.3d at 350;
Montgomery, 810 S.W.2d at 388-89. Rule 403 provides that evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,
or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence. Tex. R. Evid. 403. As we have already explained, the proferred evidence had no probative
value to the facts of consequence in this case. However, even if it could be argued that the evidence
was marginally relevant under Rule 401, the district court would not have abused its discretion in
finding that whatever probative value the evidence may have had was substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay. The district court could have found that Bishop's testimony would have put the
officers and the Department on trial, confused the issues, and caused undue delay as the State would
likely have felt compelled to refute Bishop's allegations. 

 Finally, even assuming that the evidence should have been admitted, we cannot
conclude on this record that Bishop was harmed by its exclusion. The erroneous exclusion of
evidence generally constitutes non-constitutional error. See Potier v. State, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002). Non-constitutional error that does not affect substantial rights must
be disregarded. See Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had
a substantial and injurious effect or influence in determining the jury's verdict." King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Because of the considerable evidence in this case
tending to show that Bishop committed the offense, particularly the video recordings that showed
Bishop enter the bait vehicle on three separate dates, we cannot conclude that the exclusion of
purely speculative testimony by Bishop concerning an alleged police conspiracy to frame him for
the crime affected Bishop's substantial rights.

 We overrule Bishop's second issue.


CONCLUSION

 We affirm the judgment of the district court.


 __________________________________________

 Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton 

Affirmed 

Filed: August 26, 2010

Do Not Publish
1. After appellant's counsel filed his brief, this Court received from Bishop a pro se motion
to file a pro se brief. In the motion, Bishop criticizes counsel's brief and raises additional issues.
However, a criminal defendant has no right to hybrid representation or to represent himself on
direct appeal. Scheanette v. State, 144 S.W.3d 503, 505 n.2. (Tex. Crim. App. 2004). Accordingly,
the motion has been marked "received not filed," and we will not rule on or address any of the
arguments raised in the motion. See id.; Berry v. State, 278 S.W.3d 492, 495 (Tex. App.--Austin
2009, pet. ref'd).
2. According to Detective John Spillars of the Austin Police Department, the Bait Vehicle
Program "involves the use of sting vehicles which have cameras, GPS, an alarm system and a series
of sensors. These vehicles are placed throughout the city in high crime spot areas."