# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00710-CR

**Charles Bishop, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-08-203263, HONORABLE DONALD LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Charles Bishop of the offense of unauthorized use of a motor vehicle. *See* Tex. Penal Code Ann. § 31.07(a) (West 2003). Punishment was assessed at fourteen years' imprisonment. This appeal followed. In two issues on appeal, Bishop challenges the factual sufficiency of the evidence and asserts that the district court abused its discretion in excluding certain evidence.[1] We will affirm the judgment.

---

[1] After appellant's counsel filed his brief, this Court received from Bishop a pro se motion to file a pro se brief. In the motion, Bishop criticizes counsel's brief and raises additional issues. However, a criminal defendant has no right to hybrid representation or to represent himself on direct appeal. *Scheanette v. State*, 144 S.W.3d 503, 505 n.2. (Tex. Crim. App. 2004). Accordingly, the motion has been marked "received not filed," and we will not rule on or address any of the arguments raised in the motion. *See id.*; *Berry v. State*, 278 S.W.3d 492, 495 (Tex. App.—Austin 2009, pet. ref'd).

**ANALYSIS**

**Factual sufficiency**

In his first issue, Bishop asserts that the evidence is factually insufficient to support his conviction. Specifically, Bishop claims that the evidence was factually insufficient to overcome his defensive theory of mistake of fact.

In a factual sufficiency review, an appellate court views the evidence in a neutral light to determine whether the jury's verdict of guilt was rationally justified. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006). Reversal for factual insufficiency occurs only when: (1) the evidence supporting the verdict is so weak the verdict seems clearly wrong and manifestly unjust; or (2) there is some objective basis in the record that shows the great weight and preponderance of the evidence contradict the jury's verdict. *See Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 417.

A person commits the offense of unauthorized use of a motor vehicle if he intentionally or knowingly operates another's motor-propelled vehicle without the effective consent of the owner. Tex. Penal Code Ann. 31.07(a). Thus, the State was required to show not only that Bishop intentionally or knowingly operated the vehicle, but that Bishop knew he did not have the consent of the owner. *See McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). Bishop does not dispute that he intentionally or knowingly operated the vehicle. He claims, however, that the State failed to prove that he knew he did not have consent of the owner. In other words, Bishop is arguing that he mistakenly believed that he had consent to operate the vehicle.

2

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. Tex. Penal Code Ann. § 8.02 (West 2003). A belief is reasonable if it is one that would be held by an ordinary and prudent person under the same circumstances as the actor. *Winkley v. State*, 123 S.W.3d 707, 712 (Tex. App.—Austin 2003, no pet.). As with other defenses, the defendant bears the initial burden to produce some evidence that supports his theory of mistaken belief. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991); *Roy v. State*, 161 S.W.3d 30, 35 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Once the defendant produces such evidence, the State then bears the burden of persuasion to disprove the raised defense. *Zuliani*, 97 S.W.3d at 594. However, the burden of persuasion "is not one that requires the production of evidence, rather it requires only that the State prove its case beyond a reasonable doubt." *Id*. "When a jury finds the defendant guilty, there is an implicit finding against the defensive theory." *Id*.

In this case, the jury heard evidence that on June 1, 2008, Bishop entered an unlocked vehicle parked on Sabine Avenue in downtown Austin. Unbeknownst to Bishop, the vehicle was a "bait car" owned by the Austin Police Department as part of its Bait Vehicle Program.[2] As soon as Bishop entered the vehicle, a camera inside the vehicle began recording. The camera recorded Bishop rummaging through the car for approximately two minutes, then getting into the driver's seat and starting the vehicle, and driving away. Approximately seven minutes later, the camera recorded

---

[2] According to Detective John Spillars of the Austin Police Department, the Bait Vehicle Program "involves the use of sting vehicles which have cameras, GPS, an alarm system and a series of sensors. These vehicles are placed throughout the city in high crime spot areas."

3

Bishop park the vehicle, turn off the engine, and remain inside. Shortly thereafter, the camera recorded Bishop being arrested. A copy of the video recording was admitted into evidence and played for the jury. Also admitted into evidence and considered by the jury were video recordings of two previous entries by Bishop into the same bait vehicle on May 30 and May 31, 2008. In the recordings, Bishop can be seen rummaging through the vehicle for several minutes and examining items left inside such as papers, candles, and shoes.

The arresting officer was Officer Vernon Stevenson of the Austin Police Department, who was also identified in the indictment as the "owner" of the vehicle. Stevenson testified that he had authority over the vehicle, did not give consent for Bishop to enter the vehicle, and was not aware of anyone else giving Bishop consent to enter the vehicle.

Bishop testified in his defense. According to Bishop, he is homeless, and his way of making money is to "assist[] people who go to Sixth Street to party in parking their vehicles." Bishop explained that he would offer to park or retrieve someone's vehicle and, in return, the driver of the vehicle would usually give him a "tip" of one or two dollars. On the night in question, Bishop claimed, he was approached by a "Mr. Feliciano" who asked Bishop to help locate his vehicle in exchange for twenty dollars. Bishop testified that he agreed and proceeded to walk to the area where "Mr. Feliciano" said the vehicle could be found. Bishop explained,

> So I wandered to the vehicle and I opened the door and the keys were right on the console. And I got in the vehicle. And as you saw, I checked it out and around and started the vehicle and drove the vehicle directly past the police station right up to the hill where I had left Mr. Feliciano. I got there and parked the vehicle and that's when I was arrested.

4

When asked if he had any information as to who this "Mr. Feliciano" was, Bishop testified, "Other than speculation, no, I don't." Bishop described him as an intoxicated Hispanic male, "short, kind of heavyset," and an "older man." Bishop claimed that, upon his arrest, he had informed the officers about Feliciano and told them that he "had been given permission to drive the vehicle."

According to Bishop, on the two prior occasions he had entered the vehicle, he thought the vehicle had been stolen or abandoned and was looking inside the vehicle "for identification to the owner of the vehicle so that I could contact them possibly to receive a reward for getting their vehicle returned to them." Each time the camera recorded him searching through the vehicle, Bishop claimed, he was merely looking for the owner's identification.

On cross-examination, Bishop admitted to prior felony convictions for unauthorized use of a motor vehicle, aggravated theft, credit card abuse, and possession of a controlled substance. Bishop also admitted that, during a prior conversation with the prosecutor in which the prosecutor had showed Bishop the video recording of his entries into the vehicle, Bishop "hung his head" and nodded when the prosecutor told him, "The jig is up, Charles. You're busted. You're a liar and we all know it." Bishop denied, however, that he was lying about what had happened.

The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, was free to disbelieve Bishop's version of events and to credit the testimony of the arresting officer that neither he nor anyone else gave Bishop permission to enter the vehicle. *See McQueen*, 781 S.W.2d at 605. The State attacked Bishop's credibility extensively during cross-examination, and Bishop was unable to provide much information regarding the identity of the alleged "Mr. Feliciano." More importantly, the jury saw Bishop enter the bait vehicle on three separate occasions, search through the vehicle each time, and, on the third occasion, drive

5

the vehicle for approximately seven minutes.  The jury could have found that the video evidence, combined with Officer Stevenson's testimony regarding lack of consent, satisfied the State's burden of proof.  In finding Bishop guilty of the offense, the jury implicitly rejected his mistake-of-fact defense.  We cannot say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict or that the verdict is clearly wrong or manifestly unjust.

We overrule Bishop's first issue.

**Evidence admissibility**

In his second issue, Bishop asserts that the district court abused its discretion in excluding evidence "regarding the motivation of the authorities to prosecute the case against him." According to Bishop, Austin Police Department officers "were conspiring to frame him for the crime in question, rather than face the prospect of being sued by Mr. Bishop for various tort claims." Bishop wanted to provide testimony to that effect.  The district court did not allow him to do so, finding the proferred evidence to be not relevant.  On appeal, Bishop argues that the exclusion of the evidence violated Rule 404(b), which allows for the admission of extraneous offense evidence for certain purposes, including to show the motive and bias of witnesses other than the defendant. *See* Tex. R. Evid. 404(b); *Castaldo v. State*, 78 S.W.3d 345, 349 (Tex. Crim. App. 2002).

In a hearing outside the presence of the jury, Bishop explained the nature of the evidence he wanted to introduce.  He recalled that in September 2007, while he was "assisting" an intoxicated individual on Sixth Street, he was assaulted by a man who, according to Bishop, was a suspect in several robberies.  Bishop claimed that as a result of his actions in identifying the man in

6

a lineup, the man was later apprehended. Bishop then proceeded to describe a subsequent assault against him that had allegedly occurred outside a homeless shelter. When asked how this assault was connected to the Austin Police Department, Bishop explained that the Department "has a presence there at the [shelter] facility and office" and was involved in investigating the assault. According to Bishop, the Department, after reviewing videotape footage of the incident, believed Bishop was the responsible party and had decided not to file charges against Bishop's alleged assailant.

Bishop claimed that the Department was afraid that he would file a lawsuit against the Department "for covering up the assault and not pursuing to take charges against this man, assaulting me, as well as I might file suit against [the homeless shelter] staff themselves." Bishop was asked by his counsel, "You think that because these cops are afraid of civil liability, that's why they have it in for you?" Bishop answered, "Exactly. . . ." The district court interjected, "Well, do we have any evidence that the people who observed that on that film and the officer who stopped you was involved in this in any way? Do you have any evidence those people were part of the conspiracy?" Bishop responded, "Well, see that's the problem. We had no investigation to discover the possibility—possibility of this evidence based on no investigation. We can only speculate." The district court then excluded the evidence on the basis of relevance. Later, Bishop also attempted to speculate during his testimony that "Mr. Feliciano" may have been an undercover police officer. The district court also excluded this testimony as not relevant.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). A trial court abuses its discretion when its decision "is so clearly wrong as to lie outside that zone within which

7

reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

We first observe that Bishop failed to object on the basis of Rule 404(b) during trial. To preserve a complaint for appellate review, the record must show that the complaining party "stated the grounds for the ruling that [he] sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1). "[I]t is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible." *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005). Thus, the complaining party on appeal must have "brought to the trial court's attention the very complaint that party is now making on appeal." *Id*. At trial, Bishop merely argued that the evidence was relevant to show that the police had engaged in a conspiracy to frame him. He did not argue that the evidence was admissible under Rule 404(b) to show the motive and bias of the witnesses against him. Thus, he has failed to preserve error.

However, even assuming that Bishop had preserved error, we cannot conclude on this record that the district court abused its discretion in excluding the evidence. The district court excluded the evidence as not relevant. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Evidence which is not relevant is inadmissible. Tex. R. Evid. 402. Here, as the district court observed, the proferred evidence had no relevance to the issue of whether Bishop had committed the offense of unauthorized use of a motor vehicle. Bishop provided no evidence that the testifying officers were involved with,

8

or even aware of, the events that Bishop described. As Bishop admitted, the officers' connection to the alleged police conspiracy against him was purely speculative. Nor is there any indication in the record that Bishop was "set up" by an undercover officer posing as "Mr. Feliciano." On cross-examination, both of the testifying officers were asked if they knew of a police officer named Feliciano. Both testified that they did not. Thus, the district court did not abuse its discretion in finding that the proffered evidence had no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Nor would the district court have abused its discretion in excluding the evidence under Rule 404(b). To be admissible under Rule 404(b), the proffered evidence must, among other requirements, survive a balancing test under Rule 403. *See Castaldo*, 78 S.W.3d at 350; *Montgomery*, 810 S.W.2d at 388-89. Rule 403 provides that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403. As we have already explained, the proffered evidence had no probative value to the facts of consequence in this case. However, even if it could be argued that the evidence was marginally relevant under Rule 401, the district court would not have abused its discretion in finding that whatever probative value the evidence may have had was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay. The district court could have found that Bishop's testimony would have put the officers and the Department on trial, confused the issues, and caused undue delay as the State would likely have felt compelled to refute Bishop's allegations.

Finally, even assuming that the evidence should have been admitted, we cannot conclude on this record that Bishop was harmed by its exclusion. The erroneous exclusion of evidence generally constitutes non-constitutional error. *See Potier v. State*, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002). Non-constitutional error that does not affect substantial rights must be disregarded. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Because of the considerable evidence in this case tending to show that Bishop committed the offense, particularly the video recordings that showed Bishop enter the bait vehicle on three separate dates, we cannot conclude that the exclusion of purely speculative testimony by Bishop concerning an alleged police conspiracy to frame him for the crime affected Bishop's substantial rights.

We overrule Bishop's second issue.

## CONCLUSION

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: August 26, 2010

Do Not Publish